HOSKINS *et al. vs.* SHEDDON, administrator, *et al.*

1. There was testimony to show that the debts which form the foundation of this suit were extinguished; but if otherwise, these claims should not have priority over the debts contracted with innocent parties without notice of such stale and questionable demands.

2. Notes were given in Tennessee on October 4, 1869, the last of which fell due October 4, 1872. On February 7, 1870, the maker died, and administration was granted on March 7, thereafter. The payees were of full age and under no disability from the date of the maturity of the notes. The administrator died December 16, 1879; and subsequently, the estate of such deceased administrator being insolvent, the payees of the note sought to collect the note out of the assets of such estate:

*Held,* that the notes were barred by the statute of limitations.

(*a.*) By the law of Tennessee, the creditors of deceased persons, if they reside within that state, shall, within two years, and if without, in three years from the qualification of the executor or administrator, exhibit to him their accounts, debts and claims, and make demand and bring suit for the recovery thereof, or be forever barred in law and equity. No admission or promise on the part of the administrator after the debt is barred, can operate to defeat the statute, and not to plead the bar will charge the administrator with a *devastavit.* All actions against the personal representatives of a decedent, for demands against such decedent, shall be brought within seven years after his death, notwithstanding any disability existing; otherwise they will be forever barred.

(*b.*) When a foreign executor or administrator is sued in the courts of this state, the nature and extent of his liability will depend upon the laws of the state where he derived his authority to administer the assets of the decedent.

April 10, 1883.

Debtor and Creditor. Administrators and Executors. Comity of. States. Laws. Statute of Limitations. Before Judge FAIN. Whitfield Superior Court. October Term, 1882.

Reported in the decision.

T. R. JONES; R. J. McCAMY, for plaintiff in error.

W. K. MOORE; McCUTCHEN & SHUMATE; D. W. HUMPHREYS, for defendant.

CRAWFORD, Justice.

The facts material to an understanding of this case, and upon which the rights of the parties turn, are undisputed, and substantially as follows :

On the 4th day of October, 1869, James D. Hoskins, John W. Hoskins, George D. Hoskins, Mary I. Sloan and Martha J. Hambright, children and heirs of Mrs. John A. Hoskins, being of full age and the joint owners of a farm in the state of Tennessee, entered in a contract by which James D. George and Mary I. Sloan sold their interests in the said farm to John W. Hoskins and B. F. Hambright, for which they received $300 in cash and separate notes to each amounting to $1,481, the buyers taking bond for titles.   On February 7th next thereafter, John W. died, and the vendors re-entered on the land, and sold it to James D. Hoskins, another brother, who gave his notes to George D. and Mary I. Sloan for precisely the same amount of the notes held by them against John W. Hoskins.   Subsequently, and very soon thereafter, the land was again sold to one J. E. Raht, who paid them in full for the same.

John A. Hoskins, a citizen of Georgia, and father of all these parties, was appointed the administrator of John W. Hoskins, in March, 1870, and continued to be such administrator until his death December 16th, 1879.   The litigation in this case arises from an effort on the part of James D. Hoskins and Mary I. Sloan, to collect out of estate of John A. Hoskins, which is insolvent, the notes given by John W. Hoskins to them for their interest in the Tennessee farm in October, 1869.

This claim is based on the fact that, under the laws of Tennessee, when John W. Hoskins died, being without wife or children, his real estate went to his brothers and sisters, and his personal estate to his father, with the payment of his debts as a charge upon it.   That the re-entry upon the land by the parties selling it was as the heirs of

their deceased brother, and not as the former owners, under an abandonment of the contract made with him. That their notes against John W. Hoskins had never been paid by the said John A. Hoskins, who was his administrator, and that the estate of said John A., in the hands of his administrators, the defendants in error, is liable for and should be decreed to pay the same.

Under the foregoing facts and the law as applicable thereto, the chancellor below, to whom the same was submitted without the intervention of a jury, decided that the complainants were not entitled to recover any amount of money from the estate of the administrators of the said John A· Hoskins:

(1st.) Because the effect of taking possession of the land, under the circumstances set out, extinguished the notes given for the land.

(2d.) Because the debts, if not extinguished, were barred by the statute of limitations.

1. Whether the effect of taking possession of the land, under the circumstances shown, extinguished the notes sought to be recovered from the estate of John A. Hoskins or not, is unnecessary to rule in this case. But in looking at all the facts, we are not prepared to say that the finding and judgment of the chancellor on this point was error. For, when it is remembered that the deceased brother had only paid one hundred and fifty dollars on the land, and that, upon his death, another brother came in and took it, executing his notes for the precise amount of those first given, notwithstanding the interest of the parties had increased; and further, that afterwards it was resold, and they had received the full value therefor, including, of course, the value of the share inherited from the brother; as also, that they had allowed these notes to stand uncollected through so many years, whilst the father was contracting debts on the faith of the property in his possession here, all tend to make such a case as might well satisfy the chancellor that, as the heirs were all grown, and the fat

who was the administrator, not objecting thereto, they. made that agreement, and considered the land theirs as before, thereby extinguishing the notes, at least as far as was necessary to bind themselves. But even if this were not so, should a court of equity allow them, under the agreed statement of facts, to come in and claim priority over other *bona fide* creditors of the said John A. Hoskins, and subject his property to the payment of a debt claimed to be a trust debt, originating and existing beyond the jurisdiction of the state, of which even the possibility of notice was doubtful, to say nothing of its being a transaction altogether in the family of the decedent, and of which other creditors could be so easily kept in ignorance ?· We repeat, therefore, that we are not prepared to say that the debts were not extinguished according to the finding of the chancellor; but even if they were not, that, in equity and good conscience, they should not have priority over the debts contracted with innocent parties without notice of such a stale and questionable demand.

2. Passing from this to the question of the statute of limitations, we have no difficulty in reaching the conclusion that the judgment below was correct on this point. John A. Hoskins was appointed administrator of John W. Hoskins, March 7th, 1870; the notes now claimed were given October 4th, 1869; the last one fell due October 4th, 1872, and there was no disability of the payees, and a full right of action against the administrator from the date of the maturity of the note.

It is provided by the Code of Tennessee (1871), section 2279, that "the creditors of deceased persons, if they reside within this state, shall, within two years, and if without, shall, in three years from the qualification of the executor or administrator, exhibit to them their accounts, debts and claims, and make demand and bring suit for the recovery thereof, or be forever barred in law and equity."

Under this statute, it is held by the supreme court of that state that no admission or promise on the part of the

administrator, after the debt is barred, can operate to defeat the statute (9 Yerg., 433, 435–63), and that not to plead the bar of the statute, will charge the administrator with a *devastavit.* 7 Humph., 373, 383; 3 Head, 658, 663.

Section 2786 of the same Code provides, after stating the various limitations, as follows : " But all actions against the personal representatives of a decedent for demands against such decedent, shall be brought within seven years after his death, notwithstanding any disability existing; otherwise they will be forever barred."

" This statute," says the supreme court, " establishes what is called a positive prescription or limitation, in contradistinction to a negative prescription. The distinction between them is that the former acts upon and extinguishes the right, while the latter only affects the remedy." State *vs.* Crutcher, 2 Swan., 504, 512; 9 Yerg., 57.

" To this statute there are no exceptions in favor of persons under disabilities. The courts can, therefore, make none." 6 Yerg., 224; 1 Head, 248.

Without a repetition of the facts of this case, it is clear that, if John A. Hoskins were in life and sued as the administrator of John W. Hoskins by these parties, they could not recover, even of the assets of John W., in his hands unadministered; how much less, then, can they recover from the assets of John A., in the hands of his administrator.

It will be seen that we have applied the law of Tennessee to the facts of this case, and this is in conformity to the former rulings of this court. In the case of *Johnson et al. vs. Johnson et al.*, 56 *Ga.*, 329, this court say: "When a foreign executor or administrator is sued in the courts of this state, the nature and extent of his liability will depend upon the laws of the state or country where he derived his authority to administer the assets of the decedent."

Judgment affirmed.